The answer admitted the intention charged in the bill to erect a dam and mill in the vicinity of the town, and at a short distance from the academy; but denied that the injurious consequences which were apprehended would be the necessary result of such erection.
Upon the coming in of the answer, a motion was made to dissolve the injunction. The court refused the motion, but retained the injunction until hearing; and the cause, having been set for hearing, was removed into this Court, it was now moved to dismiss the bill. *Page 181 
After argument, upon the suggestion of the Court, the Attorney-General
was made a party complainant, curia adv. vult.
Two inquiries are presented by the argument in this case. The first relates to the power of the Court to interpose the preventive remedy of an injunction; the other, whether it is proper to exercise the power under the evidence and circumstances of (391) this case.
It is manifest that without some jurisdiction competent to prevent a threatened evil of the sort complained of, there would be a great defect of justice in this State; for when the injury, if done, cannot be repaired in damages, it is essential to the protection of right that this Court, whose process is alone adequate to the occasion, should interpose its summary remedy to compel persons so to use their own property as not to injure that of others. It has accordingly been long settled as a principle of the Court that in cases where irreparable mischief may be done, as of waste, or in a plain case of nuisance, an injunction will be immediately granted. Where there is a clear right to the enjoyment of the subject in question, and an injurious interruption of that right which in equity ought to be prevented, this Court will not withhold its aid; and this rule is abundantly established by the authorities. 1 Vern., 120, 127, 275; 2 Ves., 414; 2 Atkyns, 391, and many others.
It appears to me that the evidence in this case approaches as nearly to ascertain the certainty of the apprehended evil, if not prevented, as can be expected from the nature of the subject. There was formerly a mill-pond nearly in the situation where the defendant proposes to establish his, and during the whole time of its being kept up the whole community, particularly the younger part of it, were subject to destructive autumnal diseases. Soon after the milldam was broken and the pond emptied, a visible improvement took place in the healthfulness of the place; children were raised to maturity, the population increased, and a seminary of learning was erected within what was before the sphere of pestilential influence. Of these facts it is impossible to doubt after reading the depositions. Is it not to be expected that the same causes, if put into operation, will produce the same effect? Nor is the probability of this lessened by the proposed alteration in the site of the pond, its size, and the situation of the mill. The utmost allowance that can be made on this point is that it may not render the town quite so unhealthful; but if the Court sees that not merely in the fears of the inhabitants, (392) but a moral certainty exists that if this work is suffered to proceed, the health of this community will again be put in jeopardy, it is *Page 182 
its bounden duty to interpose. Indeed, it is impossible to shut our eyes to the fact that in this climate a collection of stagnant water in the neighborhood of a town will render the inhabitants unhealthy; and however different theories may be pressed into the service of accounting for it, or plans proposed to mitigate the evil, the painful conviction forces itself upon us that the effect invariably follows the cause, and no antidote is yet discovered.
Under this observation and experience, a court might be satisfied with much less evidence than has been adduced in this case. I am of opinion that the injunction ought to be made perpetual.