602 So.2d 186 (1992)
Nolan BARRAS, et al., Plaintiffs-Appellants,
v.
Tim HEBERT, et ux, Defendants-Appellees.
No. 91-336.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
Writ Denied October 30, 1992.
*187 J. Burton Willis, St. Martinville, for Barras.
Raymond L. Marie, New Iberia, for Hebert.
Before YELVERTON, COREIL[*], and PATIN[**], JJ.
YELVERTON, Judge.
This is a nuisance case concerning a commercial alligator farm. The main issue is whether the odor that emits from the alligator "containing building" is so foul and noxious as to amount to a nuisance. Over 30 named plaintiffs filed suit seeking to enjoin the defendants' farming operation. In a bench trial the judge decided against a complete shutdown of the operation. However, he did enjoin the defendants, from allowing the operation to emit noxious and offensive odors. The court specifically ordered the defendants to employ airlocks, in the form of a double door ventilation system designed to prevent odor from escaping when people enter and leave the "containing building". The judgment also called for the defendants to pay all court costs including the expert witness fee of Alfred Potier, the Parish Sanitarian.
The plaintiffs, not satisfied with the extent of the injunction, have appealed seeking the complete shut-down of the alligator farm. The defendants filed an answer to the appeal claiming that the odor was not a *188 nuisance and that the trial court erred by ordering any corrective measures at all. Furthermore, the defendants complain that the plaintiffs' appeal is frivolous and that the plaintiffs should be made to pay all costs including all expert witness fees. In the alternative the defendants assert that the testimony of Alfred Potier, the Parish Sanitarian, was not that of an expert and that the court erred in awarding a witness fee of $200 and assessing the fee as costs.
For reasons which we will hereafter briefly explain, we set aside this witness fee. In all other respects, we affirm the judgment.

FACTS
The defendants, Tim Hebert and his wife Kathleen, started a commercial alligator farming operation in 1989. The farm is located on 4.2 acres of land in a residential area just outside of the corporate limits of St. Martinville in St. Martin Parish. The Heberts' home is on the same 4.2 acre tract of land. There was no evidence that the farming operation violated any state or local zoning, health, or other regulations or prohibitions, and no evidence of the existence of any subdivision restrictions.
The plaintiffs' respective homes are all located in close proximity to the Heberts' farm. The plaintiffs' petition alleged that the stench from the farm was so unbearable that it made the plaintiffs' homes nearly uninhabitable. The plaintiffs also claimed that the farm's presence devalued their respective properties.
The trial lasted three days. Over 25 witnesses testified. All explained how the alligator farm affected their ability to use and enjoy their respective properties. Some said the odor was unbearable, while others described it as simply noticeable. At the close of the evidence, the court personally inspected the farm. It was upon this evidence that the court rendered its judgment.

A. Nuisance

The obligations of vicinage are found in L.S.A.-C.C. arts. 667-669. These Articles state:
Art. 667. Limitations on use of property
Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
Art. 668. Inconvenience to neighbor
Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage.
Art. 669. Regulation of inconvenience
If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.
In Rodrigue v. Copeland, 475 So.2d 1071, 1077 (La.1985), the Supreme Court said of these articles:
These obligations of vicinage are legal servitudes imposed on the owner of property. These provisions embody a balancing of rights and obligations associated with the ownership of immovables. As a general rule, the landowner is free to exercise his rights of ownership in any manner he sees fit. He may even use his property in ways which "... occasion some inconvenience to his neighbor." However, his extensive rights do not allow him to do "real damage" to his neighbor.
We sometimes use the term "nuisance" in describing the type of conduct which violates *189 the pronouncements embodied in La. C.C. arts. 667-669. Rodrigue, supra. At issue in this case is whether the smell from the Heberts' alligator operation has caused a mere "inconvenience" or "real damage" to their neighbors and their right to enjoy their own premises.
Whether or not a nuisance exists is a question of fact. Acadian Heritage Realty v. City of Lafayette, 434 So.2d 182 (La.App. 3rd Cir.), writ denied 440 So.2d 733 (La.1983). The fact finder's decision in a nuisance case cannot be overturned in the absence of manifest error. Evangeline Parish Pol. Jury v. Deshotel, 556 So.2d 1007, 1008 (La.App. 3rd Cir.1990).
The trial court provided comprehensive reasons for judgment. The reasons for judgment summarized the testimony of nearly every witness. Furthermore, the court itself personally inspected the premises. From our reading of the record, we cannot say that the trial court's decision, to enjoin the Heberts from emitting noxious odors from their alligator farm, was clearly wrong or manifestly erroneous.

B. Remedy

Since the farm is a nuisance, the plaintiffs claim that the court erred by not shutting down the operation altogether. In ordering less drastic measures the trial court relied on the Louisiana Supreme Court case of Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (1971). There the court found a horse stable in a residential area in New Orleans to be a nuisance. In deciding whether to enjoin the entire operation of the stable, the court stated:
The record also supports the conclusion that the stable is a nuisance because of the manner in which it is operated. However, we have not been shown that it is impossible to maintain this horse lot and stable in such a manner as to free it from the complaints which the plaintiffs make, therefore we will not abate the business entirely. Francisco v. Furry, 82 Neb. 754, 118 N.W. 1102 (1908). Instead we will permit defendant to continue his operations under the following mandates, restrictions and injunctions:
Spray ground and premises generally and thoroughly with a disinfectant and deodorizer, approved by the local health authorities, at such intervals as may be prescribed by those authorities.
Dispense rat poison at strategic locations about stables, sheds and bins and renew weekly.
Feed bins should be covered and so constructed as to deny rodents access to feed.
Remove all manure and other waste daily.
Limit the number of horses using the lot and stables to ten.
Keep the premises properly drained to prevent water from standing there. Id. 245 So.2d at 390.
In other words, the court would not shut down the stable if the problem that it caused could be cured by less restrictive means. Robichaux is just one example in our jurisprudence wherein trial courts, when faced with corrective measures that would be greatly disproportionate in cost to the actual damage caused, have been ordered to fashion reasonable alternative remedies. See Gaharan v. State Through DOTD, 579 So.2d 420 (La.1991); J. Weingarten Inc. v. Northgate Mall, Inc., 404 So.2d 896 (La.1981); Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972); Boxill v. Metrailer, 358 So.2d 986 (La.App. 1st Cir. 1978).
In refusing the plaintiffs' requested relief, the court ruled that "the testimony at this stage of the proceedings is insufficient to warrant a closure of the alligator operations...." Relying on the post trial deposition testimony of Wilma Subra, an expert in chemical analysis and environmental consulting, the trial court entered its less restrictive injunction.
We find that the trial court's action of fashioning a reasonable, less drastic alternative to the remedy prayed for is in accord with the state's jurisprudence, and that it is fair. Accordingly, the trial court's order is not in error.

*190 C. Costs

In their answer to the appeal the Heberts complain that they should not be made to pay all the court costs. They base their argument on two grounds. First, they argue that their expert witnesses were particularly useful to the court. Second, the defendants point out that the plaintiffs did not get all the relief that they sought. Because of these two factors, the defendants complain that it is not fair that they bear all court costs.
A trial court is vested with great discretion in determining who is liable for costs of court. The court may assess costs against any party as it may consider equitable, even against the party prevailing on the merits. DB Orban Co. v. Lacko Pipe & Supply, Inc., 496 So.2d 1382 (La. App. 3rd Cir.1986).
In the case before us, the Heberts were the parties cast in judgment. Their alligator farm was found to be a nuisance. Because of this nuisance, the plaintiffs had to file a lawsuit in order to get relief. It is true that the Heberts' did successfully prevent the complete shut-down of their operation. Nonetheless they still interfered with the plaintiffs' rights to enjoy their respective properties in a reasonable manner. Considering the overall circumstances of the case, we find that the trial court did not abuse its discretion in assessing costs to the Heberts.
As an alternative to their court cost argument, the Heberts argue that the court erred in assessing Alfred Potier's $200 witness fee as an item of cost. Specifically the Heberts complain that Potier was merely a fact witness and offered no expert opinion testimony to any relevant matter.
LSA-R.S. 13:4533 provides that the trial court shall tax witness fees as costs. LSA-R.S. 13:3666 permits experts to receive additional compensation at an amount to be fixed by the court. The trial court may determine this amount from the testimony adduced at trial. LSA-R.S. 13:3666 B(1). In actually fixing a dollar amount for expert witness fees, § 3666 vests the trial court with much discretion which will not be disturbed on appellate review absent an abuse of discretion. Pitts v. Bailes, 551 So.2d 1363 (La.App. 3rd Cir.1989), writ denied 553 So.2d 860 (La.1989) & 556 So.2d 1262 (La.1990).
Potier works for the St. Martin Parish Health Department. The plaintiffs called Potier on direct examination and asked him many questions about his observations of the Heberts' farm and the smell that it produced. However, none of these questions required expertise or special skill above that of an ordinary layman. He was not proffered as an expert and was not recognized as one by the court.
On the defendant's cross-examination, Potier stated that he was never asked to inspect the alligator operation, nor did he even investigate the cause or possible causes of its odor. Because of his lack of first-hand knowledge, Potier stated that he would be reluctant to render any kind of an opinion regarding the issue that was being litigated. He told the court that waste from the Heberts' alligator farm would be classified as industrial and would not even come under his jurisdiction.
The fixing of a fee for Potier was apparently an oversight on the part of the trial judge in this lengthy trial, and we will correct the judgment by ordering that an expert fee for this witness be disallowed.
We have considered the remaining assignments of error, and find no merit to any of them.
For the foregoing reasons, the trial court's judgment in regard to Potier's expert fee of $200 is reversed and set aside. The rest of the court's judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[*] Honorable Joseph E. Coreil, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[**] Honorable John A. Patin, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.